UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

AMTRUST NORTH AMERICA, INC.,

                              Plaintiff,

            -v-

MBA NETWORK, LLC,

                              Defendant.

18 Civ. 6241 (PAE) (RWL)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

On June 10, 2018, Plaintiff AmTrust North America, Inc. ("AmTrust") commenced this lawsuit seeking relief from defendant MBA Network, LLC ("MBA") for an alleged breach of contract. After MBA failed to appear, AmTrust moved for a default judgment against it. On March 11, 2019, the Court held a hearing on that motion, at which MBA's principal, Forrest Reynolds, appeared. Dkt. 21 at 1. Reynolds did not contest liability, but did dispute AmTrust's calculation of damages and attorneys' fees. *Id.* Accordingly, the same day, the Court entered a judgment of liability in favor of AmTrust and against MBA and referred the matter for an inquest into damages to United States Magistrate Judge Ona T. Wang. *Id.* Before that inquest was held, however, and after a September 13, 2019 settlement conference with United States Magistrate Judge Robert W. Lehrburger (who had been redesignated to this case), AmTrust and Reynolds notified the Court that they had reached a settlement in principle. Dkt. 38. On October 15, 2019, the parties filed a settlement agreement executed by AmTrust, MBA, and Reynolds. *See* Dkt. 42. On October 16, 2019, the Court approved and entered that agreement. Dkt. 44 ("Settlement Agreement").

Pursuant to the Agreement, MBA was to pay AmTrust a total of $230,000 in monthly installments, commencing on October 30, 2019 with a series of $5,000 payments, and culminating on July 30, 2019 with a final payment of $160,000. *See* Dkt. 49 ("Pl. Mem.") at 5.[1] If MBA missed any one of those payments and, after notice from AmTrust, failed to cure that default within five days, all remaining payments accelerated and became due immediately, along with an additional $25,000, for a total of $255,000. *See id.*; Settlement Agreement ¶¶ 1–3. Further, Reynolds "absolutely and unconditionally personally guarantee[d] the prompt payment" to AmTrust of all MBA's obligations under the Agreement. Settlement Agreement ¶ 4.

MBA failed to make the first four $5,000 payments required by the agreement, which were due on October 30, 2019, November 30, 2019, December 30, 2019, and January 30, 2020. *Id.* ¶ 2(a)–(d); Dkt. 50 ("Schlachter Decl.") ¶ 7. On February 4, 2020, AmTrust sent notice to MBA and Reynolds informing them that they were in default. *See* Dkt. 51 ("Cohen Decl."), Ex. E ("Notice of Default"). To date, neither MBA nor Reynolds has made any payment under the Agreement. Schlachter Decl. ¶ 7.

On April 27, 2020, AmTrust filed a motion to enforce the Settlement Agreement against both MBA and Reynolds, along with supporting papers. Dkts. 48–51. The same day, the Court gave MBA and Reynolds until May 11, 2020 to respond. Dkt. 47 at 3. Neither did so. On November 12, 2020, the Court directed AmTrust to file proof of service on MBA and Reynolds, and gave defendants another chance to respond, by November 23, 2020. Again, neither did.

For the following reasons, the Court grants AmTrust's motion.

---

[1] The Settlement Agreement contains a confidentiality provision, and the parties originally redacted in their public filings the portions of the Agreement specifying the payment amounts. *See* Dkt. 42; Settlement Agreement ¶ 9. However, on April 27, 2020, the Court authorized AmTrust to publicly file unredacted information relating to those amounts, which AmTrust did in its memorandum of law in support of its motion to enforce. *See* Dkt. 47.

2

First, the Court has subject-matter jurisdiction over this action. "Actions to enforce settlement agreements are, in essence, contract actions which are governed by state law and which do not themselves raise a federal question unless the court which approved the settlement retained jurisdiction." *LaBarbera v. Dasgowd, Inc.*, No. 03 Civ. 1762 (CPS), 2007 WL 1531895, at *2 (E.D.N.Y. May 22, 2007). The basis for subject matter jurisdiction in this context "may be found in the doctrine of ancillary jurisdiction, which allows a district court to decide matters that are 'factually interdependent' with another matter before the court, or to take actions necessary 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994)). To retain ancillary jurisdiction to enforce a settlement agreement, "a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." *Id.* (citing *Kokkonen*, 511 U.S. at 381). In such cases, the district court "necessarily ma[kes] compliance with the terms of the [settlement] agreement a part of its order so that a breach of the agreement would be a violation of the order." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 305 (2d Cir. 2014) (quoting *Roberson v. Giuliani*, 346 F.3d 75, 82 (2d Cir. 2003)). As a result, the court may "enforce the settlement as an exercise of its ancillary jurisdiction to 'manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Id.* (quoting *Kokkonen*, 511 U.S. at 380).

Here, the parties' settlement agreement, which the Court "so-ordered," expressly stated that the Court "retains jurisdiction of the Litigation for the purposes of enforcing this Settlement Agreement." Settlement Agreement ¶ 7; *see Dannhauser v. TSG Reporting, Inc.*, No. 16 Civ. 747 (CM) (DF), 2019 WL 2950142, at *7 (S.D.N.Y. June 21, 2019) ("A district court can expressly

retain jurisdiction by, for example, 'so-ordering' a stipulation of dismissal that contains a provision stating: 'This Court shall retain jurisdiction over the settlement agreement for enforcement purposes.'" (quoting *Roberson*, 346 F.3d at 78)). Although the Court's order of dismissal did not expressly retain jurisdiction, it dismissed the case without prejudice, *cf. Hendrickson*, 791 F.3d at 361, and contemplated retaining jurisdiction over a settlement agreement if the parties filed one within 30 days, Dkt. 38 at 1. The Court then did so after the parties submitted the Settlement Agreement with appropriately narrow redactions. *See* Settlement Agreement at 11. Accordingly, the Court retained jurisdiction to enforce the Agreement's terms.

Second, the Settlement Agreement is enforceable and MBA and Reynolds are in breach of its terms. "A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013) (summary order) (quoting *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)). "Stipulations of settlement are favored by the courts and not lightly cast aside." *Hallock v. State*, 64 N.Y.2d 224, 230 (1984). "A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).

Under New York law, which governs the Agreement, *see* Settlement Agreement ¶ 10(o), the elements of a breach-of-contract claim are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages," *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." *BCM Dev.*, 490 F. App'x at 409 (quoting *Hallock*, 64 N.Y.2d at 230).

Neither MBA nor Reynolds have contested the enforceability of the Agreement, and it is not contestable. Moreover, AmTrust has performed all of its obligations under the Agreement, including the primary duty to release MBA from liability arising from its original breach of contract (*i.e.*, the breach of contract that gave rise to the complaint in this action, not the breach of the Settlement Agreement). Pl. Mem. at 7. There is also no dispute that both MBA and Reynolds are in default of all scheduled payments, and of the resulting accelerated payment of $255,000, to which AmTrust is entitled under the Agreement. *See* Schlachter Decl. ¶ 7.[2] AmTrust is therefore entitled to an order enforcing the settlement agreement and awarding it damages in the amount of $255,000. *See Rossi v. Stevens*, 651 F. App'x 55, 57 (2d Cir. 2016) (summary order) (proper remedy for breach of settlement agreement is "an award of damages").

## CONCLUSION

For the foregoing reasons, AmTrust's motion is granted. MBA and Reynolds shall pay $255,000 to AmTrust forthwith.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 2, 2020
       New York, New York

---

[2] The Agreement obliges only MBA to pay to AmTrust the amounts set forth in the payment plan. *See* Settlement Agreement ¶ 1 ("MBA shall pay to [AmTrust] the total sum of two-hundred-and-thirty thousand dollars . . . ."). But in paragraph four of the Agreement, Reynolds personally guaranteed that payment. *See id.* ¶ 4 ("Forrest Reynolds absolutely and unconditionally personally guarantees the prompt payment to [AmTrust] . . . of any and all obligations incurred by MBA pursuant to this Settlement Agreement . . . . Forrest Reynolds further agrees to pay the obligations without further notice, without requiring [AmTrust] first to enforce payment against MBA . . . ."). Reynolds further submitted to this Court's jurisdiction. *See id.* ¶¶ 7, 10(o). Because AmTrust has shown, and Reynolds has not contested, that (1) AmTrust is owed a debt from MBA; (2) Reynolds guaranteed payment of that debt; and (3) the debt has not been paid either by MBA or Reynolds, Reynolds is equally liable for the defaulted payments as is MBA. *See Chem. Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994).